This morning is 5-18-0388, Jones versus Jones. Whenever you're ready. Thank you, Your Honor. May it please the court. For the record, my name is Curtis Blood and I represent the appellant, David Jones. And we're asking this court to reverse and remand the most recent judgment in this matter. And of course, this court has already had this case. Justice Barber, as you wrote, the disposition. And so there was a limited scope of proceedings on remand because it was a remandment that we had to follow the disposition. The first disposition, this court reversed because the circuit court awarded an compensatory damages for contempt, which is prohibited by Illinois law. And this court said so. The judgment that we got back and that we're here on this time is the same judgment, different numbers, but with the word contempt deleted. Just delete it. Not substitute it with something else. It's just contempt is gone. There's no grounds. It's just paid. It's just paid as money. It's like mom would say, because I said so. We don't ordinarily do that in court of law, but that's what this judgment is. Well, our argument is short and sweet. Law of the case. And also the law of contempt. And there's just no other apparent basis for this judgment than contempt. The trial court wrote before stating the number, the dollar figure, that the loss of the house was the direct result of my client's failure to pay, underlying the word direct in the disposition. So leaving out the word contempt and not substituting something else doesn't leave much to the imagination. If this court had intended the first time around to have the trial court do basically the same thing, except delete the word contempt, couldn't this court have done that under Rule 366? Couldn't this court have exercised its sweeping powers on review and just cross out the word contempt and say, hey, there you go. Don't let the door hit you on the way out. That's what the trial court did. And I've got to think that the trial court was confused on the situation and could have been corrected, but something else happened, and I just want to point this out so that the procedural history is clear, is that the trial court this time around gave the decision to opposing counsel, who is not counted in this court today. He's since retired, but gave it to him and said, here, distribute the copies, and the record reflects that that's what was done. But he didn't do it until the time had about run. And that's why the sensible thing to do, which was to bring a motion to reconsider, this judgment wasn't done while we're here instead of over there, because this court could grant a motion to file a late appeal, which this court did, thank you, but it was beyond the jurisdiction of the circuit court at that point. Now, that's, like I said, that's our argument. It's short, and it's to the point, but this is the second time this case has been here, and I hope that it doesn't come back a third time, not that I mind the case of the client, but I've supported my household enough, I can support people, and I'd like them to get on with their lives, too, and I can best serve my client by pointing out that there's a procedural morass going on in here, and that is involved with the 2010 judgment of dissolution, where the trial judge, Judge Levy, split up the house equity, 60-40, but unbeknownst to her at the time of the trial, which this court pointed out that it was unbeknownst to her at the time of the trial, but the house was foreclosed. It was undergoing foreclosure during the trial, and both parties brought post-trial motions pointing out that the house was gone, and an oral argument on my client's post-trial motion. Opposing counsel, also no longer with us, pointed out that the house had been lost, the equity was gone, but for some reason, Judge Levy denied my client's post-trial motion and didn't comment on the loss of the house, didn't comment on it at all, and we're living with that albatross, with that elephant in the room, they call it, all the cliches come in handy here, ever since. My client has a blue-collar job, he's a machinist, and he lost that job. And his wife, his then-wife, didn't have a job. She was a horse person. She trained horses, she walked horses, she mucked stalls. That's what she did. So when he lost the job, when he lost his paycheck, this family went without any paycheck at all for eight months and lost the house. And that's what was going on at that time. But to this day, no court has ever sat down and divided the property in just proportions as the statute requires, with knowledge that the house, or taking into account that the house is gone. It's never been done. So what we get here on remand is the circuit judge saying Ann lost $60,000 for equity. It's a direct result of his failure to make the payments. He owes her $60,000 for lewd. He lost his job. He lost his job. It's never been considered, never been taken into account. It was overlooked in the original judgment. And that leads me to the second strange thing about the proceedings here, is both sides filed timely post-judgment motions against the judgment of dissolution clear back in 2010. The trial court, Judge Levy, denied my client's motion, like I said, overlooking the foreclosure, but never heard, never ruled on the timely post-trial motion that Ann had filed. Never ruled on it. And this court, in its disposition, its prior disposition, mentioned that. So that wasn't ruled on. It said we would note that motions remain pending before the trial court. Is this court saying that it is still within the jurisdiction of the circuit court to modify this judgment? And that's a strange concept when you realize that we have here a judgment that is without doubt final for contempt. Based on contempt petition, I mean, the court has jurisdiction of that, but it's based on enforcing a judgment that is probably not final. The judgment to enforce, the petition to enforce the judgment on that's final, but the underlying judgment is not final. And can that happen? Sure, it can happen. It's happening in this case. Anyway, if that's the point, if that is this court's, was this court's point, I hope that it would be clarified this time around, because you never know if you're saying too much or too little until you see what happens. But in this case, what happened was at trial level, nobody got it. And if this court is saying that this judgment can still be modified, we'd appreciate a kick in the pants on that. We would just appreciate a heads up on that. And maybe to keep us out of this courthouse a third time. But, and I had the opportunity to read Justice Barbaros' opinion, remanding it back with those instructions, and did not the trial court follow those instructions, have the attorneys and the parties get values of that property, took some time to get that, came to court, there was a hearing, the trial court took all that into consideration. I believe, if I wrote this correctly, your client basically testified, just to make it fair, if my notes are correct. Also, the court heard arguments and testimony on the house issue, and then made a ruling taking all that into consideration, correct? Well, I can't argue with that. That's true. That's what the judge did. Okay. So, essentially, did not the trial court file the directions from the appellate court? I don't think the judge did, no. Okay. This court, the original, the judgment that brought us here the first time was judgment for contempt. This court reversed and remanded and instructed the trial court specifically to find a remedy other than contempt. The judgment that comes before this court now, it's the same judgment, except the numbers are different and the word contempt is gone. Wiped out. It's gone. That's what I'm saying. Is that at all that this court expected out of the trial court? Because, in that case, this court could have done that. And, again, due process, it's not enough. It's enough for my mom to say because I said so, but it's not enough for a court to say because I said so. There's got to be some basis. There's got to be some grounds. And we already know contempt is out. What's the ground? And the opposing counsel says, the opposing party, rather, says that the trial court could modify the judgment of dissolution. And that may be true. And, again, I'd encourage this court to say so. The court feels that way, that this judgment can still be modified. But that being said, the judge didn't do that. The judge didn't say that. That's what the judge was going to do. There's no indication of it. There's no hint of it. It's not expressed. It's not implied. This judge did not purport to modify the judgment of dissolution. Just didn't do it. So what's the grounds? What's the grounds? I've read it. I've read it. I've read it. And I just don't see any grounds. But there's that finger. It's the direct. It's underlined. It's the direct fault. Or not fault, but direct result of his failure to pay the mortgage he was on. That sure smells like contempt. It sure smells like it. This court ordered the parties to find, and the judge, to find another remedy, to find another remedy. Where is it? So no, no. Make a long story short, but it's too late. No, didn't follow the instructions. Did not follow the instructions. No. Thank you. Thank you. Thank you. You'll have time in a moment. Counsel? May it please the court. Counsel, my name is Jeanne Lenthat, and I represent the appellee, Ann Jones, who is now known as Ann Kelly. To address some of the comments made earlier in the appellant's oral argument, this court issued a Rule 23 order in July 2017 with explicit instructions to the trial court for how to handle not only the sale of the farm equipment and in terms of the marital residence. Those explicit instructions in the Rule 23 order were followed by the trial court. As stated in the appellee's brief, the law in terms of a mandate is that a mandate is to be followed by the trial court and the trial court is to exercise its discretion within those bounds. The mandate that was issued by this court in 2017 was to proceed in conformity with the opinion. Let me stop for one second. How is Judge Smith's ruling in this case different than what we had in 2017? How is it different? How did she arrive at those numbers and that conclusion? And how is it shown in the order? In the order, the court specifically, I guess first addressing the farm equipment and the vehicles, the court explicitly addressed the exhibits and testimony by both parties as to the values of the farm equipment, the sale prices for what was sold and the fair market value for the equipment that still remained in the party's possession. That was not in the previous order. In the previous order, David was just found to be in contempt and ordered to reimburse Ann for $15,000. Judge Smith went through the basis of coming up with the number that she came up with in terms of the judgment in favor of Ann and against David for her share of those sale proceeds. What was that number this time? That has just actually slipped my mind. I know that Judge Smith took the average of the presentation of both parties' numbers, and I'm sorry, I don't have that offhand. But she did take the average of what was testified to and what was submitted actually into evidence. So that was explicitly outlined in her order. And, again, that is exactly what this court ordered the trial court to do. I think the exact language is this court stated that a determination regarding the value of the property that both parties sold is necessary and to figure out and determine what property was sold by both parties, at what price, and the fair market value of any unsold property in either party's possession that was to be sold and proceeds divided. So that is exactly what the trial court did through the hearing on remand and then entered judgment in favor of Ann. So in terms of the case law doctrine and following this court's mandate, I absolutely believe that the trial court did. The second issue in terms of the marital home, that is where this court found that civil contempt was not an appropriate remedy because David could not go back and purge himself of his contemptuous behavior by complying with the original judgment. This court, in the Rule 23 order that it issued in 2017, stated multiple times that the purpose of the intent of Judge Levy's judgment of dissolution of marriage should be upheld. By ordering that Ann receive 60% of the sale proceeds of the marital residence, Judge Levy also denied any maintenance to Ann, which she would have received had the court been notified by David at the hearing prior to the judgment of dissolution of marriage that the house was in foreclosure proceedings and that he actually had not been paying the mortgage and expenses associated with the property as he had been previously ordered to do. So, again, this court stated that while David could not purge himself, making civil contempt an inappropriate remedy, the trial court was tasked with determining an appropriate remedy. Also, I know counsel stated multiple times that there was no legal basis to modify the judgment. However, in the Rule 23 order, this court explicitly states that the motion to modify, filed by Ann, addressing that the house had been foreclosed upon and sold pursuant to a foreclosure sale, that that motion to modify was still pending before the trial court. And then David stated in his own brief in this appeal that both parties' position statements stated that the motion to modify was pending and that, sorry, stated that the motion to modify was pending and acknowledged that that was before the court at the final hearing. So I'm not sure why now that's being retracted. In finding an appropriate remedy, inter-external contempt is not the only remedy when a party violates the court order. I know counsel is stating that if David violated the court order, the only way that the court can address it is through civil contempt. However, modification, enforcement, those are just some of the other methods by which courts can enforce their own orders. How was this modified then? How is this order from Judge Smith modifying the previous order that was sent back on to me? How is it modifying the previous order? With regard to the house. With regard to the house. So the previous order that was entered gave Ann, I believe it was like $20,000, as compensatory damages for David's allowance of letting the house go into foreclosure sale proceedings and not informing the court that that was happening and just violating court orders. Judge Smith's order is a modification of actually the judgment of disillusion because now that there has been a substantial change in circumstances, which is the house is no longer available to be sold and have the sale proceeds allocated between the parties, now that that's taken place, Judge Smith used the estimate, the agreement by both parties as to the equity in the marital residence at the time of the hearing prior to the judgment of disillusion of marriage to then award Ann 60%, which was, again, the intent behind the judgment of disillusion of marriage, to award Ann 60% of the sale proceeds. So those sale proceeds were estimated to be $100,000. Ann was awarded here $60,000. David? But the order in the first place didn't state that she was to get a percentage of any proceeds from the sale. And then if there's no proceeds from the sale because of the foreclosure, I mean, 60%, 20%, whatever, zero is still zero, and to award it despite the fact that there was no profit or proceeds from the sale, isn't that, as counsel pointed out, more in line with punishment for contempt for allowing the house to be devalued by going into foreclosure? I don't see it as punishment for contempt. I think to do what counsel is asking for, which is award Ann nothing for that, would be to reward David's actions. Both, I believe, this court and the trial court found that losing the marital residence was a result of David's direct actions. When a party loses a part of the marital residence or squanders part of the marital estate during divorce proceedings, our family courts are courts of equity and essentially have the discretion to come in and make right what was done wrong. That is not, and I understand counsel makes the argument that if a party does something wrong and then there are any consequences for it, that is contempt, but that is not the case, and that's not really how we practice family law in Illinois. Again, courts have wide discretion. I cited a Supreme Court case in this matter that explicitly states that courts have substantial discretion when it comes to exercising their powers of equity, and just because a party violates a court order, lies to the court, makes misrepresentation, sorry, to the court so extreme that they cannot be held in contempt does not mean that the wrong should not be righted. I don't mean to stop you, but it sounds like you're making an argument under like a dissipation issue, similar to a dissipation of an asset during a family case. It is similar to that, but I also have practiced in many cases where it may not be explicitly dissipation or we may not have a dissipation proceeding, but a party, you know, does something to cause the marital estate to be substantially reduced or to lose a significant asset, and what counsel is requesting is that that behavior just be ignored, and that the idea, I think it's well-received and well-known that family courts are courts of equity. Again, the Supreme Court case that I cited to and the additional First District case that I cited to both discussed that principle in depth, and in the Supreme Court case, the individual that had violated the court order basically had passed away, so he actually could not be held in contempt at all. But again, the court there made right the wrong that was committed, because those are the powers of equity that the courts have. Further, I'm not sure why this court is now being asked to clarify whether the motion to modify was pending or not before the trial court, when that was explicitly stated in the Rule 23 order, and again, David even acknowledges and agreed that it was before the court. So if there was – let me just write that – since there was a pending motion to modify and a pending motion to modify still before the court, and since the original order awarded Anne a portion of the marital profit from the sale of the house in lieu of maintenance, wouldn't a modification along the lines of, okay, since there's no house to divvy up now, we're modifying the judgment of disillusion to include the maintenance award as opposed to ordering him to pay something that is no longer there? Well, in the judgment of disillusion, Judge Levy estimated that Anne would get $60,000, and because of her getting $60,000, that is why the court did not award her maintenance. So to, I guess, uphold her intent and comply with what the judgment of disillusion essentially wanted to be carried out, because I don't think that at that time, because David did not inform anybody of the foreclosure proceedings, I don't think anybody had any doubt that at least $100,000 in sale proceeds would be had by the parties. So what Judge Smith did in this most recent order was completely in line with what Judge Levy's intent was in the judgment of disillusion of marriage. And as I stated earlier, the Rule 23 order that was entered in this matter discusses numerous times that the intent of the judgment of disillusion of marriage should be upheld, and that's regarding the equipment and the vehicles and also regarding the sale proceeds. It's disputed whether or not Judge Levy was told whether or not the house was in foreclosure and had been lost prior to her entering her order. I don't think that is disputed. This court in its Rule 23 order in 2017 stated that the trial court finding that David did not tell Judge Levy was, it upheld that finding. It found David's argument to be uncredible at that point. So actually, I know that counsel did bring that up again, but that isn't in dispute. This court specifically upheld the finding from the trial court. So essentially, in regards, again, to that Rule 23 order and to the explicit instructions that were made to the trial court in terms of not only the vehicles and the equipment, but also the marital real estate, we're asking that the order of the trial court be upheld and the relief requested by the appellant be denied. Thank you. Thank you, Your Honors. Just a couple of quick points. In response to a direct question, the amount of the equipment was the judge averaged the parties' figures, and that average was $28,950, divided in half, said he owes her $14,475. And, you know, that's not worth appealing. That's just not. If it wasn't for the House, we wouldn't be here. This court held, yes, counsel's correct. This court did hold that Judge Mangarelli was right, that Judge Levy didn't know about the foreclosure at the trial. That's what he wrote. That's what this court wrote. Didn't know about it at the trial. Didn't know about it at the time of the judgment. But this court didn't touch the issue of whether Judge Levy heard it before ruling on my client's timely post-trial motion. And, in fact, this court commented in the disposition about how Judge Levy didn't mention the foreclosure, even though it was in both timely post-trial motions, and even though Anne's counsel got up in front of her with the argument of my client's timely post-trial motion and said the House is gone. So, yes, that threw me at first. How can this court say black is white? How can this court say day is night? Of course she heard it. Of course. Both sides told her. Well, this court didn't say that she didn't know about it when she ruled on the post-trial motions. This court said that she didn't know about it at the time of the original judgment, or, to be more correct, Judge Mangarelli's finding to that effect was correct. But that's as far as it went. This court mentioned that it was instructing the trial court to carry out the original intent of Judge Levy's judgment. And I want to make clear, because you just heard that again, back from the opinion, from the rule 23 order, that that was a comment specifically talking about the equipment, that the trial court was to carry out the intent of her judgment as to the equipment. This court did not repeat that as to the House. It was not carried over in any way, that comment. And, again, what I'm leading into, and this is my final point, is that the solution here is to make it clear that the trial court would not be outside its jurisdiction at this point to go back and divide the marital property in just proportions in light of the fact that the House is gone, which it has never done. And other than that, I feel very comfortable that this court understands our arguments. And thank you. Thank you very much. Thank you both for your arguments. The court will take that into consideration and issue its ruling in due course.